# CHARLESTON.

### LOT MARTIN v. CHARLES AMOS LONG.

Submitted January 10, 1923. Decided January 16, 1923.

1. CONVICTS—*County Court Without Jurisdiction to Appoint Committee for One Whose Sentence to Penitentiary Stayed by writ of Error.*

   While one is under sentence to confinement in the penitentiary for more than one year, but the execution of the sentence is stayed by writ of error issued by this court and the

prisoner is released on bond pending the prosecution of the writ of error, a country court has no jurisdiction, under section 11, chapter 163, Barnes' Code, 1918, to appoint a committee to take charge of the prisoner's estate, and an appointment made under such circumstances is void.   (p. 627).

2.  SAME—*No Committee for One Sentenced to Penitentiary Can be Made Until Imprisonment Actually Begun.*

No appointment of a committee for such prisoner's estate can be made under that statute until the prisoner's term of imprisonment under the sentence has actually begun. (p. 628).

3.  SAME—*Right of One Under Sentence of Imprisonment to Manage Property or Make Contracts Unaffected by Sentence Until Actually Begun.*

Until the prisoner's term of imprisonment has actually begun, his right to manage his property and to make contracts is unaffected by such sentence.   (p. 630).

4.  SAME—*Sentence to Penitentiary Does Not Make Void Contract Executed by Convict Before Imprisonment While Execution Stayed on Writ of Error.*

A sentence to the penitentiary for a term of years does not make void a contract duly executed by a convict before he is imprisoned under the sentence and while execution of the judgment of conviction is stayed on writ of error to the Supreme Court of Appeals.   (p. 630).

(McGINNIS, JUDGE, absent).

Certified from Circuit Court, Wetzel County.

Action by Lot Martin against Charles Amos Long.   An order overruling demurrer to plaintiff's declaration certified for review.

*Affirmed.*

*Thayer M. McIntire,* for plaintiff.

MEREDITH, JUDGE:

This is an action of assumpsit to recover $1,500 for services in cutting and hauling timber for the defendant under a written contract; a demurrer to plaintiff's declarations having been overruled, the trial court certifies certain questions arising on the sufficiency of plaintiff's declaration for review.

The facts ás they appear from plaintiff's amended declaration are substantially as follows:

. At the October, 1919, term of the circuit court of Wetzel County, Charles Amos Long, the defendant here, was adjudged guilty of murder in the second degree and was sentenced to serve 12 years in the penitentiary. This sentence was immediately suspended and defendant was released on bond, pending his application for a writ of error. A writ of error was awarded by this court and on September 1, 1920, during the pendency of the case here, plaintiff, Martin, entered into a written contract with defendant in his own proper person and with John M. Lowe who was acting as defendant's committee, whereby plaintiff for a stipulated consideration, to be paid monthly, agreed to cut and haul certain timber growing on the land of the defendant. This contract was aptly drawn and was regularly signed by the three parties in their proper capacities.

Owing to changes in the manner of cutting and hauling the timber, which were insisted upon by the defendant, and through no fault of plaintiff, plaintiff was unable to complete the cutting and hauling in the period named in the contract but did complete the work during the month of March, 1921.

On September 7, 1921, this court reversed the judgment of the circuit court imposing the 12-year sentence upon defendant, set aside the verdict and remanded the cause for a new trial. The new trial so granted, resulted, in October, 1921, in an acquittal and the prisoner was discharged.

The foregoing is but an outline of the facts alleged in the declaration, which contains a full recital of the contract and the circumstances surrounding its performance, but as no issue of fact is here involved, we find it unnecessary to detail the circumstances further. Plaintiff alleges full performance on his part and the failure of the defendant to pay for the services rendered. Defendant demurs to the declaration. His grounds for demurrer are the questions certified.

Though defendant files no brief here, we understand that he defends upon the theory that his civil rights being sus-

pended between the dates of his conviction and the final judgment of this court on the writ of error, no legal responsibility attached to him by reason of his joining in the contract; that plaintiff's contract having been entered into with the committee, the latter should have been joined in the action; and that the committee having exceeded its authority in attempting to dispose of defendant's growing trees, the contract fixes no legal obligation on the defendant or his property.

The solution of these questions depends upon the civil status of the defendant at the time of his entering into the contract with plaintiff. He was under conviction for a felony, but had been released on bond pending the prosecution of the case in this court, and, presumably, a committee had been appointed by the county court to administer his real and personal estate. Two theories may be suggested to sustain defendant's position of civil irresponsibility at that time. First, the common law doctrine that a person convicted of a felony is civilly dead; and, second, the effect of section 11, chapter 163, Barnes' Code, 1918, which authorizes the appointment of a committee for the estate of one sentenced to the penitentiary for more than one year.

We find little difficulty in disposing of the first proposition. Whatever may have been the status of such a person at the common law—and we find many expressions even in the early cases which seem to limit the application of the *civilitur mortuus* idea to particular cases—we think our Constitution (Art. 3, Sec. 18) and statutes (Sec. 4, Chapter 152, Barnes' Code, 1918,) abolishing corruption of blood and forfeiture of estate on conviction of a felony, plainly preserves the property rights of one so convicted. *Haynes* v. *Peterson,* 125 Va. 730, 100 S. E. 471, 6 A. L. R. 1456; 2 Kent, Commentaries, page 386. So, we hold with Minor (2 Minor, Real Property, sec. 1096) that, unless modified by other statutory provision, "One attainted may not only take, but may hold and dispose of lands as freely as others." As heretofore stated, however, section 11, chapter 163, Barnes' Code, 1918, relied upon by defendant, has a distinct application to the matters in ques-

tion. This section, which has been but slightly modified since its adoption from the Virginia Code (Code of Va. 1860, ch. 163, sec. 14) reads as follows:

> "When a person is sentenced to confinement in the penitentiary for more than one. year, the estate of such convict, if he have any, both real and personal, shall, on the motion of any party interested, be committed by the county court of the county, in which his estate or some part thereof may be, to a person selected by such county court, who, after giving bond before the said county court in such penalty as said court may prescribe, shall have charge of said real estate until such convict is discharged from such confinement."

We must now answer the second proposition suggested above. Was this defendant deprived of his civil rights by virtue of this provision? We must consider defendant's situation when this contract was made. He was convicted of a felony, sentenced, released on bond, pending action here on the writ of error, and a committee was acting for him. He was not in actual confinement, yet a committee had undertaken to manage his property. We find little authority to enlighten us on the status of one in his peculiar situation. The nearest approach to it is a case much relied upon by plaintiff in his brief, *Harmon* v. *Bowers*, 78 Kan. 135, 96 Pac. 51, 16 Am. & Eng. Ann. Cas. 121. Harmon was sentenced to the penitentiary, April 12, 1904, and appealed to the Supreme Court where the judgment was affirmed, December 1, 1904. After his conviction and sentence in the District Court, but before confinement, he and his wife executed a deed to Simpson, which was put in the hands of one, Gilmer, to be delivered to Simpson for the benefit of Mrs. Harmon. After Harmon's confinement, Bowers negotiated a purchase of the property from Mrs. Harmon, and the deed was handed over to Simpson, who conveyed the property to Bowers. The action was brought by Harmon to recover the land and for rents and profits, on the grounds, first, that on account of his legal disability as a convict he was unable to make a

legal transfer of his realty during the time he was under sentence but at liberty under bond; and, second, that the deed which he made to John R. Simpson, in which his wife joined, had never been legally delivered. Both the trial court and the Supreme Court held for the defendant on each of these grounds. The statute under which this decision was rendered (Sec. 2301, General Statutes, 1901) is as follows:

> "A sentence of confinement and hard labor for a term less than life suspends all civil rights of the person so sentenced during the term thereof."

Another statute provided for the appointment of a trustee to take charge of and manage the estate of such a person, but such appointment could not be made until satisfactory evidence was given that the convict was actually imprisoned.

Construing these statutes, the court said:

> "From these provisions, it appears that civil rights are not suspended until the convict is imprisoned. If we should hold that civil rights are suspended the moment sentence is pronounced the defendant's punishment would be increased by taking away his civil rights for an indefinite period in excess of the term of imprisonment, which does not begin until the stay allowed upon appeal has expired and he is imprisoned, or possibly, when he is in custody to be conveyed to the penitentiary."

It will be observed that the situation presented to the Kansas court, while similar to the present case, does differ both as to the laws construed and the facts involved. There we find a statute expressly suspending the civil rights of a person sentenced to the penitentiary, such suspension, according to the decision, beginning at the date of actual imprisonment. Here there is no such statute. As stated above, under our constitutional and statute provisions, a convicted felon retains the civil right of disposing of his property. There the statute provided for the appointment of a trustee upon proof of actual confinement. Our statute providing for

the appointment of a committee makes no express mention of the necessity of showing actual confinement. There, so far as the opinion shows, no trustee was appointed. In the present case, the declaration avers, and it is admitted by demurrer, that a committee was acting for the defendant.

As we see it, the controlling question is whether after the appointment of a committee and before actual confinement, this defendant retained his civil right of disposing of his property. Putting it more broadly, was he *sui juris,* in respect to his property rights? Obviously, the Kansas case sheds little light on this particular phase of the question. The solution of the inquiry must depend on the effect of our own statute. Could the county court legally appoint a committee for defendant under the circumstances? He stood convicted, under sentence of imprisonment, but was released on bail pending action on his case in this court. The execution of the judgment was suspended or stayed. Under the statute, that suspension was to continue until final action on the writ of error here. Code, 1918, ch. 160, sec. 6. The state had no control over defendant's person, so long as the judgment was stayed. No one but his surety on his bail bond could take him into custody because of that judgment. He could do so because he was on his bond, but his right to do so did not at all arise from the judgment, but because of the bond. If he were on his bond before conviction and sentence, he could take him into custody and surrender him to the jailer so long as his liability on the bond continued. The judgment or sentence being stayed, the state had no rights thereunder that could be enforced during the stay, either as to his person or his estate. Did any private individual have any rights arising from that sentence, that authorized him to apply to the county court for the appointment of a committee for defendant's estate? We think not, so long as the execution of the sentence was stayed. Until final action of this court on the writ of error, no one had any right because of that sentence of imprisonment to move the county court to appoint a committee for defendant's estate. Until the case was disposed of here it was not known whether the sentence

would stand. When it was disposed of the sentence was annulled. The statute says that the committee, once appointed and qualified by giving bond, ''shall have charge of said estate until such convict is discharged from such confinement.'' But in this case, the defendant never was confined under the sentence. Literally, in this instance, that portion of the statute never could be complied with, if we concede that the committee might be legally appointed before the confinement began; his confinement never began, and hence he never could be released from it; therefore the committee might continue to have charge of defendant's estate, notwithstanding his acquittal on the new trial. We think a reasonable interpretation of the statute is that after the prisoner has been convicted, sentenced and his term of imprisonment has begun, then any interested party may apply to the county court for the appointment of a committee for his estate, but not until then. While the prisoner is out on bond he can better look after his estate than a committee. He retains his rights of contract; he may sue and may be sued. The interests of all parties are unaffected by the suspended sentence. To permit the appointment of a committee for the estate of one sentenced to the penitentiary under such circumstances, while the sentence is suspended and a writ of error is pending in this court to determine whether that sentence shall stand, thus depriving defendant of all control over his property, might and in many instances would work grave injustice. Creditors or malicious persons might tie up his estate and thereby deprive him of proper means on which to live or even employ counsel to prosecute his writ of error. This view is sustained by 4 Minor, page 977.

We are therefore of opinion that the county court had no authority to appoint a committee to take charge of defendant's estate, and that the appointment, if made, as we infer it was, is void. It necessarily follows that the committee's act in executing the contract in question is wholly without force or effect; that the defendant had a right to execute it, and, so far as the record shows, it is binding upon him. The demurrer was therefore properly overruled, and we so answer the question certified.                                *Affirmed.*