82 S.E.2d 445 (1954)
NIBERT
v.
CARROLL TRUCKING CO. et al.
No. 10619.
Supreme Court of Appeals of West Virginia.
Submitted February 2, 1954.
Decided March 23, 1954.
Dissenting Opinion April 1, 1954.
Concurring Opinion June 10, 1954.
*447 Arthur S. Landacre, Huntington, for plaintiff in error.
Scherr, Meek & Vinson, Daugherty & Daugherty, Duncan W. Daugherty, Sr., J.B. Meek, E. A. Marshall, William C. Beatty, Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, for defendants in error.
*446 HAYMOND, Judge.
This writ of error was awarded to a judgment of the Circuit Court of Cabell County in an action of trespass on the case instituted by the plaintiff Lawrence Nibert who seeks to recover from the defendants Carroll Trucking Company, a corporation, C. C. Carroll, C. I. Carroll, Paul Carroll and Virgil Carroll, partners trading and doing business as Carroll Equipment Company, and Howard B. Thornburg and Claud H. Thornburg, damages for personal injuries resulting from the alleged negligence of the defendants. By the judgment complained of the court denied a motion of the plaintiff in his own name to set aside a previous voluntary nonsuit and reinstate the case and awarded costs against the plaintiff.
This Court granted the plaintiff permission to move to reverse the judgment of the circuit court and this case was submitted for decision on February 2, 1954, upon the original record, the motion to reverse, and the briefs and the oral arguments in behalf of the respective parties.
The action was instituted on February 15, 1951, and a declaration was filed at March rules, 1951. An amended declaration was filed on June 16, 1951, on which process was issued returnable to July rules, 1951. After the action was commenced, but before it was matured for hearing and set for trial at the following September regular term of the circuit court, the plaintiff was indicted for a felony and, apparently upon his plea of guilty, was sentenced to be confined in the penitentiary of this State for an indeterminate term of not less than one year or more than ten years. He was confined in the Cabell County jail until September 29, 1951, when he was committed to the penitentiary.
On August 28, 1951, his wife, Lila Nibert, was duly appointed his committee as provided by Section 33, Article 5, Chapter 28, Code, 1931. On September 10, 1951, the action was revived in the name of the committee and was set for trial on October 1, 1951. At that time the committee moved for a continuance on the ground that the plaintiff, because of his incarceration in the penitentiary, was unable to appear and testify upon the trial of the case. The defendants resisted the motion for a continuance and insisted that the case be tried at that time. The court denied the motion to continue the trial of the case and, on motion of the committee, entered an order of nonsuit.
In December, 1952, within three terms of court after the entry of the order of nonsuit, the plaintiff, having been released on parole, in his own name moved the court *448 to set aside the nonsuit and reinstate the case. The defendants resisted the motion and the court, after hearing the testimony and the arguments in support of and in opposition to the motion, by order entered January 9, 1953, denied the motion and entered judgment against the plaintiff for costs. The order recites that the grounds on which the court denied the motion were that the plaintiff was then a convict released on parole and that he had failed to show good cause for reinstatement of the case. The record does not contain the evidence submitted upon the hearing of the motion and the only supporting facts presented by the plaintiff, as disclosed by the record, are the statements of the plaintiff in an affidavit filed by him that he was unable to appear and testify when the case was called on October 1, 1951, because on the Saturday immediately preceding that date he was transported against his will to the penitentiary to serve a lawful sentence previously imposed upon him; that as his injuries were personal the action could not be tried in his absence and a nonsuit was unavoidable; and that since then he had served his sentence and had been released from the penitentiary.
In support of his motion to reverse the adverse judgment of the circuit court the plaintiff contends: (1) That the plaintiff, notwithstanding his status as a convict released from the penitentiary on parole, is a competent person to move for reinstatement of the case in his own name; (2) that his compulsory absence while confined in the penitentiary at the time the voluntary nonsuit was entered constituted good cause for reinstatement of the case; and (3) that the action of the trial court in denying the motion imposed upon the plaintiff, in a civil case, a penalty for an unrelated criminal offense and constituted cruel and unusual punishment within the meaning of Article III, Section 5, of the Constitution of West Virginia which forbids the imposition of such punishment.
It is evident that at the time the plaintiff made his motion to set aside the nonsuit and reinstate the case he had not completely served his sentence and that he had not been pardoned of his offense. His status then was and apparently still is that of a convict under a partially unserved sentence of imprisonment for a felony who was free from actual confinement but subject to future confinement for the unserved portion of his sentence in the event he violates the provisions of his parole. His release from actual confinement was not final or absolute but contingent upon his future conduct with respect to the terms upon which he was paroled. In criminal law a parole is a conditional release. The condition is that if the prisoner observes the terms of the parole, he will receive an absolute discharge from the remainder of his sentence, but that if he does not comply with the terms of the parole, he will be returned to prison to serve the unexpired portion of the sentence. Black's Law Dictionary, Fourth Edition, page 1273.
Section 33, Article 5, Chapter 28, Code, 1931, relating to a committee for a person convicted of a felony and sentenced to imprisonment for more than one year, provides, to the extent here pertinent, that when any person is confined in the penitentiary of this State, under sentence of one year, or more, his estate shall be committed, by the county court of the county where his estate may be, to a person who, after giving bond, shall have charge and management of such estate until the convict is discharged from confinement or dies. Section 36 of the same article and chapter of the Code in part provides that the committee may sue and be sued in respect to debts due to or from the convict and in respect to all other causes of action for which the convict might sue or be sued if no incarceration had taken place; that no action or suit shall be instituted by or against the convict after he is incarcerated; and that all actions or suits to which he is a party at the time of his incarceration shall abate and so continue until revived by or against the committee whose duty it shall be to prosecute, or defend, as the case may be.
From the foregoing statutory provisions it is clear that the suspension or the abatement of the right of a convict, under *449 sentence of imprisonment for one year, or more, to sue occurs only when his confinement begins and continues only while such confinement lasts. In Martin v. Long, 92 W.Va. 624, 115 S.E. 791, this Court held that until a convict's term of imprisonment has actually begun his right to manage his property and to make contracts is not affected by the sentence of imprisonment. A prisoner who escapes from the penitentiary while serving a sentence of imprisonment is not constructively within the penitentiary while he is at large. State v. Griffith, 88 W.Va. 582, 107 S.E. 302. And a convict who escapes from custody while working in a road gang in another county may not be tried for that offense in Marshall County on the theory that he was constructively confined in the penitentiary when he was at work outside that" county. State v. Dignan, 114 W.Va. 275, 171 S.E. 527. In Moss v. Hyer, 114 W.Va. 584, 172 S.E. 795, the opinion contains this language: "It would seem clear that a convict, after discharge, might proceed with the prosecution of a suit which had been instituted on his behalf by his committee. By the same measure it would follow that if a convict had no committee or if the committee had failed to institute an action to redress a wrong occasioned to the convict within the term of his Confinement, the latter would himself have the right to institute such action following his discharge if his right so to do were unaffected by the lapse of time."
The provisions of Sections 33 and 36, Article 5, Chapter 28, Code, 1931, apply to a convict only while he is actually confined in the penitentiary and, as the plaintiff is a convict who, by virtue of his parole, was, at the time of his motion, in fact released from actual confinement, he was entitled to make such motion in his own name and his committee was without authority to make it. To hold otherwise would tend to defeat, in substantial measure, the purpose for which the parole system was established by the Legislature. The purpose of the present parole system, which was created long after the incorporation in Section 14, Chapter 163, Code of 1868, of the original provisions relating to the status of a convict sentenced to imprisonment in the penitentiary for more than one year, is to afford to a person convicted and sentenced to imprisonment an opportunity to reform and, by demonstrating his determination to do so, to become a law abiding member of society from which he was removed by his conviction and sentence. If a convict under sentence of imprisonment while released from confinement on parole does not possess and can not exercise the right to manage his estate, or make contracts, or sue, without the intervention of a committee, he can with difficulty, if at all, support himself, or his lawful dependents if he is a husband or a father as is often the case, and his desire to reform is jeopardized and temptation to resort to improper or criminal conduct may be accentuated beyond his power to resist. The statutes dealing with the status of a convict sentenced to confinement in the penitentiary and with the parole of such convict do not operate to produce any such supposed result. On the contrary a convict under sentence of imprisonment in a penitentiary for one year, or more, while released from confinement on parole, may manage his estate, make contracts, sue in his own name, and, in a case in which he is the plaintiff, make a motion in his own name to set aside a nonsuit and reinstate the case.
Section 12, Article 8, Chapter 56, Code, 1931, is in these words: "Any court may, on motion, reinstate on the trial docket of the court any case dismissed, and set aside any nonsuit that may be entered by reason of the nonappearance of the plaintiff, within three terms after the order of dismissal shall have been made, or order of nonsuit entered; but any such order of reinstatement shall not be entered until the accrued costs in such case shall have been paid."
In applying this statute this Court has held that it does not entitle an applicant to have an order of dismissal or nonsuit set aside as a matter of right, State ex rel. The Wilkes Insurance Agency v. Damron, 85 W.Va. 619, 102 S.E. 238; that the trial court is vested with a sound discretion in ruling upon a motion to reinstate, the exercise of which will not be disturbed *450 unless abused, Higgs v. Cunningham, 71 W.Va. 674, 77 S.E. 273; Thomas v. Jones, 105 W.Va. 46, 141 S.E. 434; White Sulphur Springs v. Jarrett, 124 W.Va. 486, 20 S.E.2d 794; and that to set aside an order of dismissal or nonsuit and reinstate the case it is necessary to show good cause in support of a motion to set aside and reinstate. Higgs v. Cunningham, 71 W.Va. 674, 77 S.E. 273; Thomas v. Jones, 105 W.Va. 46, 141 S.E. 434; Murray v. Roberts, 117 W.Va. 44, 183 S.E. 688; White Sulphur Springs v. Jarrett, 124 W.Va. 486, 20 S.E.2d 794. The only facts and circumstances offered by the plaintiff in support of his motion to set aside the nonsuit and reinstate the case are that he was confined in the jail of Cabell County after the institution of the action until September 29, 1951, when he was transported against his will to the penitentiary to serve a lawful sentence of imprisonment which made it impossible for him to be present in person when the action was set for trial on October 1, 1951; that he sought a recovery of damages for personal injuries; and that it was necessary for him to be present to testify at the trial. His incarceration and his consequent absence from court when the case was called for trial were the result of his own improper and unlawful conduct. When he committed the crime of which he was convicted he knew, or should have known, that his criminal act would result in a sentenece of imprisonment which would necessarily prevent his personal appearance when his case was called for trial. The plaintiff offers no excuse for his failure to present at the trial, by deposition, the same testimony which he could have given if personally present in court and he does not say that he did not have a reasonable opportunity to introduce his testimony by that method of proof. These acts and omissions by the plaintiff do not show good cause in support of his motion to set aside the nonsuit and reinstate the case or indicate an abuse of discretion by the circuit court in denying it; and in the absence of a showing of good cause in support of a motion to set aside a nonsuit and reinstate the case the ruling of a trial court denying the motion will not be disturbed by an appellate court.
The final contention of the plaintiff that the action of the circuit court in denying his motion to set aside the nonsuit and reinstate the case imposed upon the plaintiff, in a civil case, a penalty for an unrelated criminal offense and constituted cruel and unusual punishment within the meaning of Article III, Section 5, of the Constitution of this State is entirely devoid of merit. The constitutional provision that cruel and unusual punishment shall not be inflicted has no present application for the obvious reason that the refusal of the circuit court to grant the motion neither imposed a penalty nor inflicted punishment of any kind upon the plaintiff who, notwithstanding his status as a convict released from confinement on parole, was merely an unsuccessful litigant in an ordinary action at law.
The judgment of the Circuit of Cabell County denying the motion to set aside the nonsuit and reinstate the case and awarding costs against the plaintiff is affirmed.
Affirmed.
RILEY, Judge (dissenting).
With great deference I dissent from the result reached by the majority of the Court in affirming the judgment of the Circuit Court of Cabell County, denying plaintiff's motion to set aside the nonsuit and reinstate the case, and awarding costs against the plaintiff. Nevertheless, I am in complete accord with both points of the syllabus, but dissent from the factual holding of the Court under the postulate contained in point 2 of the syllabus that the plaintiff has not shown good cause in support of his motion to set aside the nonsuit and reinstate the case.
In the majority opinion it is stated that: "The only facts and circumstances offered by the plaintiff in support of his motion to set aside the nonsuit and reinstate the case are that he was confined in the jail of Cabell *451 County after the institution of the action until September 29, 1951, when he was transported against his will to the penitentiary to serve a lawful sentence of imprisonment which made it impossible for him to be present in person when the action was set for trial on October 1, 1951; * * *".
This action having been instituted, and a declaration and amended declaration having been filed, the case was regularly on the docket of the Circuit Court of Cabell County before plaintiff was indicted for a felony and was sentenced to be confined in the penitentiary of this State for an indeterminate term of not less than one year nor more than ten years. At the time plaintiff timely made his motion that the court set aside the nonsuit and reinstate the case, plaintiff was released from confinement on parole. It was, therefore, proper for the trial court, as it did under point 1 of the syllabus, to entertain plaintiff's motion.
In my opinion, the holding of the Court that plaintiff is barred from proceeding further in the action at law instituted by him, because plaintiff's incarceration in the penitentiary and his subsequent absence from the Circuit Court of Cabell County, when the case was called for trial, were the result of his own improper and unlawful conduct, is too harsh and does not serve the ends of justice. This action having been regularly docketed, and the motion to set aside the nonsuit and reinstate the case having been regularly entertained by the trial court, plaintiff's subsequent incarceration in the jail of Cabell County and the State penitentiary caused him to be involuntarily absent from the Circuit Court of Cabell County at the time his case was set for trial. In the circumstances portrayed by this record, the trial of the case should have been continued indefinitely pending plaintiff's release on parole, or at the expiration of his sentence of conviction, or the plaintiff should have been permitted to proceed in the Circuit Court of Cabell County by his committee, in any of which events an injustice would not have been done. Plaintiff, in my opinion, has shown good cause in support of his motion.
I would, therefore, reverse the judgment of the trial court and remand this case to that court with directions that the court grant plaintiff's motion to set aside the voluntary nonsuit and reinstate the case, and that the case be dealt with by the trial court in any one of the three methods hereinabove suggested.
LOVINS, Judge (concurring).
I concur in the result reached in this case, on the ground that the plaintiff failed to show good cause in support of his motion to set aside the nonsuit and reinstate the case on the trial docket, but I do not agree with the statement of the law contained in the first point of the syllabus, and I respectfully dissent from such holding.
At common law, convicts who were banished or abjured the realm, or those who entered a monastery and became a monk professed, were considered to be civilly dead.
The doctrine of civiliter mortuus was not always applied under the strict common law rule to those who were convicted and sentenced to prison for less than life. See 6 American and English Enc. of Law, Second Ed., page 64 et seq.; 16 Am.Jur., Death, §§ 5, 6 and 7; I Chitty's Blackstone, 131.
In Virginia, a sentence to prison did not of itself independently of statute involve civil death. See 1 Minor's Institutes, pages 67 and 68. It is doubtful whether there has ever been, either in Virginia or this State, such status as a civil death. See Branch v. Bowman, 2 Leigh 170.
It seems there has been a relaxation by constitutional provisions, legislation and judicial decisions of the severe doctrine of civiliter mortuus. The Constitution of this State provides: "No conviction shall work corruption of blood or forfeiture of estate." Section 18, Article III, Constitution of West Virginia. Nevertheless, some vestiges of such doctrine remains, viz.: By Section 1, Article IV, Constitution of West Virginia, a person who is under conviction *452 of a felony is not entitled to vote. A person who is confined in the penitentiary of this or another state, or a prison of the United, States for one year or more, the estate of such convict, both real and personal, may be committed by the county court of the county in which his estate or some part thereof is located, to some person as a committee to manage the estate of the convict until he is discharged from confinement or dies. Code, 28-5-33.
The constitutional provisions and the statute, Code, 28-5-33, disclose that the fact of sentence to the penitentiary for one year or more imposes certain civil disabilities on a felon so convicted. This Court, in considering the status of convicts, has held that a person under conviction and sentence to confinement in the penitentiary for one year or more, pending a writ of error issued by this Court, may not have a committee appointed until his sentence has actually begun. The right of such person to manage his property and make contracts is unaffected. Martin v. Long, 92 W.Va. 624, 115 S.E. 791. It may be noted in passing, the judgment of sentence against Long, the convict, was reversed by this Court. Webb v. County Court, 113 W.Va. 474, 168 S.E. 760, is authority for the principle that a person who has been convicted of a felony is not permanently disqualified from holding such public office, he having paid the full penalty of the law. A convict confined in the penitentiary working in a road gang outside Marshall County is not constructively confined in the penitentiary of this State. State v. Dignan, 114 W.Va. 275, 171 S.E. 527. See Dudley v. State, 55 W.Va. 472, 47 S.E. 285.
A person who was undergoing imprisonment for a felony, upon the restoration of his rights may prosecute an action for injury occurring during the disability, provided it is not barred by the statute of limitation. Moss v. Hyer, 114 W.Va. 584, 172 S.E. 795.The rule announced, in the Dignan caseis contrary to the rule adopted by the Supreme Court of Virginia. Ruffin v. Commonwealth, 21 Grat. 790. The rule in the Ruffin case seems to have been followed by the Supreme Court of Appeals of Virginia, in the case of Guarantee Co. of North America v. First Nat. Bank, 95 Va. 480, 28 S.E. 909.
It is the general rule that a convict may not institute an action or suit while under a final sentence of conviction until pardoned or punished, but he may be sued by others. 21 R.C.L. 1180; 41 Am.Jur., Prisons and Prisoners, §§ 38 and 39.
The foregoing provides the background for the real question at issue here. The Court's opinion releases a convict from civil disability, though he is neither pardoned nor punished, but is at liberty on parole. This conclusion is predicated upon the fact that the convict is not actually incarcerated in prison. It may be conceded that there is some argument for that view. Nevertheless, we find no statute in this State which authorizes a restoration of civil rights of a convict on parole. Under the general rules of common law, he was not restored unless he had been pardoned or had been fully punished for the offense. Bearing in mind that the constitution of this state provides that such parts of the common law, as were in force when Article VIII, of our Constitution, went into operation should continue to be the law of this State until altered or repealed by the legislature, Article VIII, Section 21, Constitution of West Virginia, I think there should be a statute expressly releasing a paroled convict from disability instead of a judicial decision.
This question is posed. How can the common law disability of a convict be altered or ameliorated in the absence of an enactment of a valid statute by the legislature? I have found no such statute. Likewise, I have found no authority from other jurisdictions which holds that the civil rights of a convict are restored to him when he is granted a parole. See 20 R.C.L. 578 and 579.
There is a substantial distinction between punishment, pardon, parole and probation. Of course, punishment, in accordance with the judgment of the Court, means that a *453 person who has been punished has complied fully with the judgment of the Court and suffered the punishment inflicted upon him.
A person who is pardoned unconditionally is likewise discharged of all the effects of a conviction and judgment of sentence. An unconditional pardon restores his rights as well as his liberty. 20 R.C.L. 564.
A paroled prisoner enjoys his liberty outside the walls of the penitentiary, but he is subject to the direct control and conditions of the statute authorizing his parole. 67 C.J.S., Pardons, § 22-a, b. A parole is in no sense a pardon. Board of Prison Com'rs v. De Moss, 157 Ky. 289, 163 S.W. 183, 187. See Summers v. State, 31 Ala.App. 264, 15 So.2d 500; 39 Am.Jur., Pardon, Reprieve and Amnesty, §§ 81, 82. A parole does not in any way alter the sentence. 39 Am.Jur., Pardon, Reprieve and Amnesty, § 85. See Annotation 28 A.L.R. 947.
As to the effect of a pardon, see Annotation, 126 A.L.R. 275.
From the foregoing, I reach the conclusion that a convict sentenced for one year or more to the penitentiary who has been paroled, is not restored to his civil rights, and the disability attendant upon such convict remains in full force and effect, notwithstanding such convict may be released from actual imprisonment by parole, and therefore, I dissent from the first point of the syllabus in this case.