# CHARLESTON.

STATE v. CLINTON WEBB

(No. 5359)

Submitted May 12, 1925.    Decided May 19, 1925.

WITNESSES--*Eliciting Fact on Cross Examination of Accused, Over Objection and Exception, That He Had Previously Served Sentence for Crime, Which Had No Connection with One in Question, Was Error.*

In a trial for forgery where the accused is examined as a witness on his own behalf, it is error upon cross examination by the prosecuting attorney to elicit the fact, over his objection and exception, that he had been previously convicted of a crime and served a sentence in the penitentiary, for the purpose of impeaching his testimony, which crime had no semblance to or connection with the crime for which he was being tried.

(Witnesses, 40 Cyc. p. 2624).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

99 W. Va.

Error to Circuit Court, Randolph County.

Clinton Webb was convicted of forgery, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*W. B. & E. L. Maxwell,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, PRESIDENT:

Defendant was convicted of forgery and given an indeterminate sentence of from two to ten years in the penitentiary, and from this sentence he prosecutes this writ of error, alleging: (1) that the verdict was contrary to the law and evidence; and (2) that he was prejudiced by the introduction of improper testimony.

Defendant purchased from the Smith Motor Sales Company an automobile tire, an inner-tube and some gas, to pay for which he delivered to it a check for $32.00 signed by J. B. Webb and made payable to the order of defendant, Clinton Webb, on the Elkins National Bank, dated July 31, 1924. The check was presented to the bank and payment denied because of insufficient funds to the credit of J. B. Webb, and on the ground that the signature of the drawer was not genuine. Smith, the manager of the Sales Company, took the check, a day or so afterwards, to the purported drawer, J. B. Webb, the father of defendant, for the purpose of having the check paid. Webb, according to his testimony, denied that the signature was his, and also denied that he had given authority to defendant to sign his name to the check. He refused to pay it. Defendant was then arrested, and within a short time thereafter, J. B. Webb, the father of defendant, paid the check. Defendant swore that he had authority from his father to sign his father's name to checks for small amounts; and the father testified that he had given such authority to the boy and that he had paid several checks theretofore issued by the boy to which his name was signed as drawer. He denied that he told Smith that he had not given authority to the boy to sign his name

to checks for small amounts which the boy might need.  He said that he did tell Smith that he did not give authority to sign that particular check.  His explanation of his refusal to pay the check when demand was made upon him for payment was that Smith had threatened to arrest the boy, and he, thinking that he had twenty days in which to pay the check before arrest could be made, concluded that he would let Mr. Smith wait, and for the further reason that Smith had owed him for work done and was not prompt in payment.  The State introduced a letter written by defendant to his father while in jail, asking his father to bail him out, and which letter made no indication that the check had been signed by the boy under authority given by his father.  Whether the boy had authority from his father as testified to by both, or whether it was a subterfuge to obtain acquittal after arrest, was a question of fact which was within the province of the jury to determine; and we cannot say that the verdict was contrary to the evidence.  The weight to be given to the evidence of the witnesses and their credibility for the establishment of any fact, is peculiarly within the province of the jury.

The second assignment of error is based upon the fact that while defendant was being examined as a witness on his own behalf the prosecuting attorney asked him if he had not just been released from the penitentiary a short time before he negotiated the check, and defendant's answer was that he ''had been released from the pen over a year before he came home,'' which question and answer were objected to, but the court refused to strike them out, on the ground that it was competent evidence as affecting the credibility of the witness.  Upon redirect examination defendant's counsel questioned him as to the cause of his confinement in the penitentiary and he replied that it was for breaking jail while he was being confined on a charge of complicity in breaking into a drug store, of which latter offense he was acquitted; but that he was sent to the penitentiary. for breaking jail.  The prosecuting attorney then asked him, in effect, if at the time he broke jail the jailer had been assaulted,

and defendant stated that the jailer was not assaulted but that they had locked him up in a cell when they left. The prosecuting attorney asked him how long he had been confined in the penitentiary, and his reply was, six years, six months and ten days. It will be observed that the offense for which he was convicted and for which he was sentenced to the penitentiary, is not clear.

Whether the accused on trial in a criminal case can be required on cross-examination by the State to answer whether he has been formerly convicted of a crime is a question on which the decisions of the various States are by no means uniform and many are in direct conflict. The weight of authority seems to be that such questions may be propounded and answer required as affecting the credibility of the accused as a witness. The theory upon which the majority ruling is based is that when the accused offers himself as a witness he stands in no better position than any other witness and is subject to the same kind of examination as any other witness. Some of the States have by statutory enactment said that evidence of former convictions may be introduced against the accused. When he takes the stand as a witness he subjects himself to the same rules of cross-examination applicable to all witnesses. In an extended note to *Morrison* v. *State of Texas*, 6 A. L. R. 1607, will be found a collation of the various decisions in the States on the point under discussion. It will be observed that many of the decisions are under statutes which allow the introduction of previous convictions of crime to be shown on the cross-examination of a witness for the purpose of testing his credibility, and even when such statutes are not in terms made applicable to the accused, they are interpreted to be applicable to him when he offers himself as a witness. And even in the absence of such a statute the majority rule, as before stated, is that the prosecution may show on cross-examination of the accused that he has been previously convicted of crime, for the purpose of lessening his credibility. The States which have adopted the minority rule, namely, that it is error to ask the accused and require answer on cross-examination as to

previous convictions of crime as affecting his credibility, are listed in the note referred to above. West Virginia is included in the States adopting the minority rule. In *State* v. *White,* 81 W. Va. 516, this court held, in the 5th point of the syllabus, that it is improper to require the accused upon cross-examination to answer the question whether he has not been convicted of another offense having no semblance to or connection with the crime for which he was being tried, for the purpose of impeaching his testimony. In that case the accused was on trial for murder and he was asked by the prosecuting attorney if he had not been convicted at a previous term of court of selling liquor in violation of the law, and he answered in the affirmative. His counsel objected to the question and answer and moved to strike it out, but the court refused to do so. The opinion prepared by Judge WILLIAMS, says that ''the testimony was not proper for any purpose, * * * Nor was it admissible as affecting defendant's credibility. The rule respecting the right to impeach a witness by proving that his moral character generally is bad, is not uniform in the different jurisdictions, but the more general rule, and the one which has been followed in this State, is that impeaching evidence must be confined to reputation for truth, and does not embrace moral character in general. Evidence of the commission of other crimes is not admissible as impeaching testimony. *State* v. *Grove,* 61 W. Va. 698; *Uhl* v. *Commonwealth,* 6 Grat. 706; *State* v. *Miller,* 75 W. Va. 591; *State* v. *Sheppard,* 49 W. Va. 582; *State* v. *Hill,* 52 W. Va. 296; 40 Cyc. 2595; 4 Chamberlayne's Modern Law of Evidence, Sec. 3276; 1 Jones on Evidence, Sec. 143, 5 Id., Sec. 861.'' The decision in the *White* case is not in conflict with *State* v. *Hill,* 52 W. Va. 296, where it is held in point 4 of the syllabus: ''On cross-examination to discredit a witness he may be asked whether he has been confined in the penitentiary; and if he answers that he has been, it is no ground of exception by the party introducing the witness. It is not necessary in such case to produce the record of conviction.'' From an inspection of the facts and opinion in the last cited case it will be perceived that the

rule there laid down was made applicable to a witness for the defense and not to the *accused* as a witness. As further emphasizing the difference in the applicability of the rule to the ordinary witness and to the defendant himself when he goes upon the stand as a witness, see *State* v. *Walker,* 92 W. Va. 499. In *State* v. *Miller,* 75 W. Va. 591, the accused was a witness, and the objection of his counsel was said to be a claim of privilege on his part and the court should have excluded the question. We are committed to the minority rule above stated, and we see no good reason for overruling our former cases adopting it. Many persons have been convicted of crimes and misdemeanors engendered by heat of passion and inconsiderate action, infirmities in human nature which are more or less prevalent in all. We can see no reason why such convictions would affect the credibility or veracity of such a person who is being tried for a subsequent and wholly unconnected offense. Undoubtedly the evidence that defendant had previously served a term in the penitentiary was prejudicial to him and was influential in the finding of the verdict. The judgment will be reversed; the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*