(No. 7533)

Submitted January 25, 1933. Decided March 21, 1933.

*Lilly & Lilly*, for relator.

*Clarence W. Meadows* and *File, Goldsmith & Scherer*, for respondents.

MAXWELL, PRESIDENT:

At the November election of 1932, Clayton Webb, relator, was elected constable of Marsh Fork District in Raleigh County. He seeks by mandamus to compel the county court to permit him to give bond and take the oath of office as such constable, the said privilege having been denied him by the court because of his prior conviction of felony.

In 1919 relator was convicted in the criminal court of Raleigh County of burglarizing a store, and was sentenced to two years confinement in the state penitentiary. In 1929 he was convicted in the circuit court of Boone County of carrying a dangerous weapon on his person (this being a second conviction of such offense, the statute making a second conviction of the offense of carrying dangerous weapons about the person a felony) and was sentenced to penitentiary confinement for one year and one day. There was no reversal of either of the felony convictions, and he received no pardon. He served the term of imprisonment in each instance.

Under the law of this state, is one disqualified from holding public office because of prior conviction of felony, unreversed and no pardon granted, the statutory penalty for the offense having been paid in full?

The right to hold public office is not an inherent right of citizenship, and if there is nothing in a state constitution determinative of the right to hold office, the matter is one for legislative determination. *Crampton* v. *O'Mara,* 193 Ind. 551, 139 N. E. 360.

Section 14 of Article VI of the Constitution of this state provides: "No person who has been, or hereafter shall be convicted of bribery, perjury, or other infamous crime, shall be eligible to a seat in the Legislature." And section 45 of the same Article provides that any person convicted of giving or receiving a bribe "shall, as a part of the punishment thereof, be forever disqualified from holding any office or position of honor, trust, or profit in this State." The latter requirement of the constitution is carried into our statutory law. Code 1931, 61-5-4 and 5. There is no similar constitutional ban on other public officials, the matter being left entirely for legislative determination.

Our only statutory provision bearing on the subject follows: "No person convicted of treason, felony, or bribery in any election, before any court in or out of this State, shall, while such conviction remains unreversed, be elected or appointed to any office under the laws of this State; and, if any person, while holding such office, be so convicted, the office shall be thereby vacated." Code 1931, 6-5-5. To paraphrase for the sake of clarity, "No person convicted of * * * felony * * * shall, while such conviction remains unreversed, be elected or appointed to any office * * *." What does this mean? It is not clear. We are of opinion, however, that the phrase "remains unreversed" should be taken to be applicable to that period of time within which there could be a reversal, and not to a subsequent period of time when there could be no reversal because the accused had undergone the term of imprisonment imposed by the law. Nobody tries to obtain reversal of a conviction of felony after the penalty has been paid. The legislature, of course, knew this and must be deemed to have used the phrase, *remains unreversed,* with the intent

of giving it a practical and not an infeasible meaning. If the legislature intended that no person convicted of felony should ever thereafter be entitled to hold public office in this state, that intent should have been made clear in the statute, and not left to inference. ''Unreversed'' must be understood to refer to court action. To construe the phrase ''remains unreversed'' as applicable to all felony convictions—that is to say, that only by court reversal could the disqualifications incident to conviction be removed—it would follow that not even by executive pardon could civil rights be restored. This would be unsound and untenable.

It is true that the right to hold office is not inherent to citizenship. *Thompson* v. *McAllister,* 38 W. Va. 485, 489, 18 S. E. 770. But it is so generally true that one who is a citizen and voter is qualified to hold public office, that any exception to that generality should be made clear and explicit.

In the absence of express constitutional or legislative inhibition, we are of opinion that there should be given to the vague and indefinite statutory provision above quoted a liberal rather than a restricted and narrow construction. Society must be protected from law violators, and their punishment must be just—commensurate with the seriousness of the offense. But the state does not punish malefactors in vengeance. She does not entertain against them throughout the years a spirit of vindictiveness, nor is the state relentless or unforgiving. It is the anxious desire of the state that those of her citizens who have transgressed her laws, suffered convictions, and paid the penalty of the law, shall profit from their unfortunate experience and thereafter make of themselves good citizens by leading lives of uprightness and usefulness. Society is interested in such result, and not in placing forever the brand of iniquity upon the forehead of one who in the frailty of humanity has departed from the narrow path. Conscientious trial judges, in imposing sentences upon convicted men, seek to impress upon them these truths. It by no means follows from the fact that the Constitution precludes ex-convicts from serving in the legislature and inhibits persons convicted of giving or receiving bribes from thereafter holding office that a felony conviction, other than for bribery, forever disqualifies the convicted person from holding any office of public

trust. The fact that the constitution particularizes in the manner noted and that the legislature has not further particularized, tends strongly to sustain the view that persons who have undergone punishment for felonious conduct are to be banned from public office only in the instances thus specified. *Expressio unius est exclusio alterius.*

We cannot subscribe to a holding which, in effect, would say that the opportunity for rendering service in public office is forever closed to one who in a moment of weakness commits a felonious offense though he pays the penalty of the law and is subsequently an honorable, upright and useful citizen.

Of course, it is not to the credit of the relator that he has twice committed felony. But who can say that he will not make a dependable constable? The voters of his magisterial district have placed confidence in him by casting for him the second highest number of votes cast for any of the four candidates for the two positions to be filled. If he proves unworthy of this confidence, such contingency can be dealt with when it arises.

We have been unable to derive much assistance from an examination of cases from other states because their statutory provisions are widely variant. However, valuable side-light is derived from a consideration of the general policy of the law of our own state with reference to persons who have served imprisonment for felony. The attitude is one of liberality and encouragement. One who has suffered such experience is not disqualified as a voter. *Osborne v. County Court,* 68 W. Va. 189, 69 S. E. 470. He is not disqualified from jury service. Code 1931, 52-1-1. He is not disqualified from being a witness in court, and within the sound discretion of the trial court, such witness may not be required to answer on cross-examination whether he had in fact undergone conviction of felony. *State v. Price,* 113 W. Va. 326, 167 S. E. 862. And, it is to be noted, under our Revised Code, one under conviction of felony (penalty not paid) is not thereby rendered incompetent to give testimony, though "the fact of conviction may be shown in evidence to affect his credibility." Code 1931, 57-3-5.

In the light of these considerations we are of opinion that the county court of Raleigh acted under a mistaken view when it refused to permit the relator to give bond and take the oath of the office to which he had been duly elected. A writ of mandamus as prayed will be awarded.

*Writ awarded.*