LEFF MOSS *v.* HALCIE P. HYER

(CC 495)

Submitted January 23, 1934.   Decided February 6, 1934.

*J. E. Springston* and *J. M. Life,* for plaintiff.
*E. G. Pierson* and *Eakle & Eakle,* for defendant.

MAXWELL, JUDGE:

On this certification, the sufficiency of a special plea is on test. The underlying question is whether the plaintiff, an ex-convict, may maintain an action for damages for personal injuries alleged to have been inflicted upon him, while a convict, through the negligence of the defendant.

By his declaration, plaintiff alleges that on the 23rd of June, 1931, while working with other men on a section of state highway No. 13, in Clay County, the defendant negligently drove her automobile against him, thereby causing him serious physical injuries. To the declaration the defendant filed a general issue plea and a special plea, in the latter of which she alleges that on the 11th of February, 1931, in the intermediate court of Kanawha County, the plaintiff was convicted of a felony and sentenced to confinement for one year in the state penitentiary, and that the plaintiff remained a convict for the year then ensuing; that in consequence of such conviction and sentence of the plaintiff, he does not have cause of action against the defendant on account of the matters set forth in the declaration. The learned trial court considered this special plea to be good and overruled a demurrer thereto. He certified his ruling to this Court for review.

In support of the plea, the defendant takes the position that at the time of the occurrences of which the plaintiff complains he was *civiliter mortuus* because he was a convict, and therefore cannot maintain an action on account of injuries alleged to have been received by him within the period that he was a convict. The plaintiff says that though he was a convict it did not follow that another might injure him with impunity; further, that upon the completion of his imprison-

ment there exists no legal impediment to his right to institute and prosecute this action.

At common law, the attainder which operated upon pronouncement of sentence for treason or other felony embraced two principal incidents, forfeiture of estate and corruption of blood; and to a variable extent, the extinction of civil rights. The latter, when fully operative, being denominated civil death, *civiliter mortuus.* 13 Corpus Juris, page 912. By the constitution of West Virginia, the first two of the common law consequences of attainder are banned from this state. "No conviction shall work corruption of blood or forfeiture of estate." Constitution of West Virginia, Art. III, section 18. But, what about a convict's civil rights?

The English doctrine of loss of civil rights upon conviction and sentence for felony is attended with much uncertainty. In the first place, there is confusion in the old books as to the cases in which it became operative. It certainly applied to persons entering into religion or abjuring or banished from the realm. 8 Ruling Case Law, page 705. "The civil death commenced, if any man was banished or abjured the realm by the process of the common law, or entered into religion; that is, went into a monastery, and became there a monk professed: in which cases he was absolutely dead in law, and his next heir should have his estate. For, such banished man was entirely cut off from society; and such a monk, upon his profession, renounced solemnly all secular concerns." Blackstone's Commentaries, Book I, Part II, p. 132; I Tucker's Commentaries, p. 39. But to just what extent the doctrine of *civiliter mortuus,* in either limited or unlimited form, applied otherwise, there is indefiniteness. This was forcefully emphasized by the Supreme Court of New York in the case of *Avery* v. *Everett,* 110 N. Y. 317, 18 N. E. 148, 6 Am. St. Rep. 368, wherein the court said: "Any one who takes the pains to explore the ancient, and in many respects obsolete learning connected with the doctrine of civil death, in consequence of crime, will find that he has to grope his way along paths marked by obscure, flickering and sometimes misleading lights, and he cannot feel sure that at some point in his course he has not missed the true road." But while this presents a very interesting field for exploration, it is not neces-

sary that such be here undertaken, because, whatever may have been the ramifications of impairment of civil rights under the ancient common law, there seems to be no uncertainty that under that law upon the restoration of the capacity of a felony convict to sue he might institute and prosecute an action for "any personal wrong done to him before or after the commencement of the period of his disability, e.g., for an assault." Dicey on Parties, page 3. Whether, under that law, such restoration could come about only through pardon need not now be considered, because, with us; the completion of the term of imprisonment imposed upon a felon restores him to his civil rights, save only as otherwise specifically provided by law. *Webb* v. *County Court of Raleigh County*, 113 W. Va. 474, 168 S. E. 760. Other statements with reference to the right of an ex-convict to sue for wrongs suffered by him while a convict, follow: "And, after a pardon, a person injured while under attainder might support an action in his own name to recover damages." 1 Chitty's Criminal Law (5th Am. Ed.), p. 726. "And if a person under an attainder be beat or maimed, or a woman in the like circumstances ravished, they may, after a pardon, maintain an action or appeal, as their cases respectively may require. And though before a pardon they are disabled to sue in their own names, I make no doubt that they are entitled to prosecute, according to the nature of their respective cases, in the name of the King, who will do equal right to all his subjects." *In re Angus Macdonald*, Foster's Crown Cases, 59, 63. In support of the same proposition, the last two authorities are cited in a note in Coke upon Littleton, Vol. 3, page 608. In *Plutner* v. *Sherwood*, (N. Y.) 6 Johnson's Chancery Reports, page 118, decided in 1822, the following observations are made with respect to the status of an attainted person at common law: "Until execution, his creditors have an interest in his person for securing their debts, and he is himself under the protection of the law, and to kill him, without warrant of law, is murder. He was, indeed, disabled to sue in his own name, but if beaten or maimed, while under attainder, or if a woman was ravished, while under attainder, and a pardon afterwards ensued, the party injured might maintain an action, or appeal, as the case might require, for the intermediate injury." And

588

thus in *Banyster* v. *Trussel,* (Michaelmas Term, 38 and 39 Eliz.) 78 Eng. Reprints, page 764: "And if there be any personal wrong done to him (attainted person), when he is pardoned he may have his action for it."

The Supreme Court of Georgia held that an ex-convict is not disqualified from suing for personal injuries received while undergoing imprisonment. *Dade Coal Co.* v. *Haslett,* 83 Ga. 549, 10 S. E. 435. An action by a convict for personal injury was upheld in *San Antonio & A. P. Ry. Co.* v. *Gonzales,* (Tex.) 72 S. W. 213.

The doctrine that convicts should have redress of personal injuries inflicted upon them through the negligence or wantonness of another is consonant with modern conceptions in respect of the proper relationship between society and convicted persons. The harshness of the common law with respect to forfeiture of estates, corruption of blood and destruction of civil rights no longer obtains in England. 33 and 34 Victoria, ch. 23, (1870). "The general effect of these statutes may be stated to be, that attainder has been abolished as from 4th July, 1870, * * *." Stephen's Commentaries on the Laws of England (16th Ed.), Vol. 1, page 371. In our case of *Martin* v. *Long,* 92 W. Va. 624, 115 S. E. 791, 792, we said: "Whatever may have been the status of such a person (convict) at the common law—and we find many expressions even in the early cases which seem to limit the application of the *civilitur mortuus* idea to particular cases—we think our Constitution (Art. 3, sec. 18) and statutes (sec. 4, Chapter 152, Barnes' Code, 1918) abolishing corruption of blood and forfeiture of estate on conviction of a felony, plainly preserves the property rights of one so convicted." Such is the prevailing doctrine in the absence of statutory inhibition. *Haynes* v. *Peterson,* (Va.) 100 S. E. 471, and authorities cited. It would indeed be an anomalous situation for a convict's property rights to be preserved for him but his personal rights be treated as nonexistent. A third person would be subject to damages for injury to the convict's real or personal property, but if this same person should assault and beat the convict while working on a road gang with other convicts, or while as a "trusty" acting as chauffeur or messenger for the warden of the penitentiary, there would be no liability for damages for personal

injuries inflicted. The mere statement of this proposition presents its own refutation. As pointed out in our recent case of *Webb* v. *Raleigh County Court, supra,* the modern attitude toward convicted persons is that of encouragement. There certainly would be scant encouragement to such person in saying to him that however seriously or painfully he might be injured through the negligence of another he should have no redress.

Our Code 1931, 28-5-33 to 36, makes provisions for committees for convicts. In section 36 is this provision: "Such committee may sue and be sued in respect to debts due to or from such convict, and respecting all other causes of action for which the convict might sue or be sued had no such incarceration taken place * * *." It would seem clear that a convict, after discharge, might proceed with the prosecution of a suit which had been instituted on his behalf by his committee. By the same measure it would follow that if a convict had no committee or if the committee had failed to institute an action to redress a wrong occasioned to the convict within the term of his confinement, the latter would himself have the right to institute such action following his discharge if his right so to do were unaffected by the lapse of time. The element of time does not enter the present equation because the action was instituted by the plaintiff in November, 1931, which was within five months after the date of the alleged injury. (He seems to have been discharged from confinement in October, 1931.) The period of limitation for an action for personal injury is one year. Code 1931, 55-2-12. Whether the statute runs against a convict in the light of the statutory provisions, Code 1931, 2-2-10(m) and 55-2-15, is a matter not requiring decision in this case.

In the Virginia case of *Ruffin* v. *Commonwealth,* 21 Gratt. 790, cited by the defendant, the court held: "A convicted felon has only such rights as the statutes may give him." But in our late case of *State* v. *Dignan,* 114 W. Va. 275, 171 S. E. 527, we expressly disapproved the principles of the *Ruffin* case. Much more in agreeableness with our conceptions of basic human rights is the statement of the Supreme Court of Georgia in *Westbrook* v. *State,* 133 Ga. 578, 66 S. E. 788: "The convict occupies a different attitude from

the slave toward society. He is not mere property, without any civil rights, but has all the rights of an ordinary citizen which are not expressly or by necessary implication taken from him by law. While the law does take his liberty, and imposes a duty of servitude and observance of discipline for the regulation of convicts, it does not deny his right to personal security against unlawful invasion.''

It is the general policy of the law that wrongs suffered through personal injuries may always be redressed in a court of law, whether at the time of receiving such injury the party so affected be *sui juris* or *non sui juris;* that there is no period of time in the life of any person when a personal wrong may be inflicted upon him without there being attendant civil liability upon the wrongdoer.

In the light of the principles discussed and the authorities cited, we are of opinion that the special plea above noted does not constitute a defense to the action, and therefore that the demurrer to the said plea should have been sustained. Thus we respond to the certification.

*Reversed and remanded.*