UNITED STATES of America, Appellee,

v.

Herman HARRIS, Appellant.

No. 9263.

United States Court of Appeals Fourth Circuit.

Argued April 17, 1964.

Decided April 23, 1964.

186

Hubert H. Senter, Franklinton, N. C. (Herman Harris and Irvin B. Tucker, Jr., Raleigh, N. C., on brief), for appellant.

Gerald L. Bass and Alton T. Cummings, Asst. U. S. Attys. (Robert H. Cowen, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

PER CURIAM.

Herman Harris was convicted by a jury of removing, depositing and concealing 150 gallons of nontaxpaid whiskey in violation of Section 7206(4) of Title 26 United States Code. We think he should have a new trial.

At the time of the alleged offense and prior thereto, in addition to doing farm work, Harris was operating, on Friday, Saturday and Sunday of each week between the hours of 5:00 and 11:00 P.M., a place of business known as the Ponderosa where canned goods, sandwiches, light foods and soft drinks were sold. The alleged offense involved in the instant case occurred about eight and one-half miles from the defendant's place of business. The Government, over defense counsel's objection, was permitted to show on cross-examination of the defendant that the reputation of the Ponderosa was "bad for liquor" when he took it over.[1]

The Government contends that when the defendant elected to testify he subjected himself to cross-examination; that the latitude to be allowed on such examination is left to the discretion of the trial judge; that the defendant, on direct examination, testified about his business and occupation and that the cross-examination was confined to "acts or conduct which reflect upon his integrity or truthfulness." We find this contention to be without merit.

The defendant here was charged, in effect, with possessing a large quantity of liquor upon which government taxes had not been paid. He was not charged with selling liquor nor was there any evidence that he engaged in such activity either at the Ponderosa or elsewhere. Even in prosecutions where it is charged that liquor was illegally sold or possessed at particular premises, there is a split of authority on the question whether evidence of the general reputation of the premises is admissible.[2] In any event, the reputation of the Ponderosa at the time of its acquisition by defendant was not pertinent here and it is inconsistent with our traditional conception of a fair trial to permit the introduction of any evidence which might influence a jury to convict a defendant for any reason other than that he is guilty of the specific offense with which he is charged.

The Government was permitted to present testimony, over defendant's objection, as to the record and *reputation* of the defendant for violating the liquor laws in the community where he lived.[3] Government counsel argue that on direct examination the defendant testified that he had been twice before convicted for dealing in nontaxpaid whiskey; that his wife testified that the defendant had not been dealing in whiskey since his last conviction in 1959; that this testimony made defendant's *reputation* a proper subject for inquiry. We reject this argument.

It is well settled in this circuit that a defendant who voluntarily offers himself as a witness and testifies in

---

1. Cross-examination of defendant, Harris, by Government counsel:

   "Q. You knew the reputation that the Ponderosa had when you took it over, didn't you, Herman?

   "A. Yes, sir.

   "Q. Didn't you know that place of business' reputation?

   "A. Yes, sir.

   "Q. Well, what was it? Bad for liquor, wasn't it?

   "A. So I heard."

2. North Carolina appears to have adopted the view that such evidence is inadmissible. State v. Springs, 184 N.C. 768, 114 S.E. 851 (1922).

3. The Government called as a rebuttal witness one Raymond Hart who testified as follows:

   "Q. How long have you known the defendant?

   "A. Approximately three years.

   "Q. Do you know his record and reputation for violating the liquor laws in the community where he lives?

   "[Defense counsel]: Objection.

   "The Court: Overruled.

   "A. Yes, sir.

   "Q. What is that record and reputation?

   "A. He has a *record and reputation as a liquor law violator on a large scale.*" (Emphasis supplied.)

his own behalf subjects himself to legitimate and pertinent cross-examination to test his veracity and credibility. Thus, the prosecution may inquire of him, by way of impeachment, whether he has been convicted of a felony, infamous crime, petit larceny or a crime involving moral turpitude.[4] If he denies prior convictions of specific offenses concerning which he is interrogated, evidence thereof is admissible as bearing upon his credibility as a witness and for no other purpose. Furthermore, if the defendant testifies as a witness in his own behalf, his general reputation, like that of any other witness, for truth and veracity in the community where he resides, among his friends, neighbors and acquaintances and the people with whom he transacts business, may be shown. These principles are so well recognized as to require little or no discussion.

■■ Equally well established is the legal principle that in a criminal case the defendant's general character cannot be attacked by the Government unless evidence of his good character is first introduced by him. As stated in United States v. Walker, 313 F.2d 236, 238 (6 Cir. 1963),

"* * * Accordingly, if the defendant calls character witnesses who testify to his good character in general, the Government can meet this evidence by the introduction of witnesses who contradict such testimony, but, in the absence of such character witnesses introduced by the defendant, the Government is not entitled to introduce testimony concerning the defendant's bad character."

And in Michelson v. United States, 335 U.S. 469, 477, 69 S.Ct. 213, 219, 93 L.Ed. 168 (1948), the Court said:

"When the defendant elects to initiate a character inquiry, another anomalous rule comes into play. Not

only is he permitted to call witnesses to testify from hearsay, but indeed such a witness is not allowed to base his testimony on anything but hearsay. What commonly is called 'character evidence' is only such when 'character' is employed as a synonym for 'reputation.'"

Continuing, at page 479 of 335 U.S., at page 220 of 69 S.Ct., 93 L.Ed. 168, the Court stated:

"* * * The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue."

■ The defendant frankly disclosed on his direct examination that he had twice been convicted of liquor law violations and his wife testified that he had not been dealing in whiskey since 1959. This is a far cry from "character" or "reputation" evidence. The defendant's admission of prior convictions bore only upon his credibility as a witness. His wife was not offered as a "character witness" since she testified only as to her personal knowledge of defendant's activities.[5] It was substantial error to permit the Government to attack defendant's character by introducing testimony concerning his reputation as a "liquor law violator on a large scale."

■ The District Court, in its charge, permitted the jury to consider this rebuttal testimony as to defendant's reputation and the objection previously made against the introduction of the testimony was not again asserted. But that testimony was improperly admitted and it follows that the court further erred in charging with respect to it. Even though the defendant failed to object to the charge or to request the court to instruct the jury correctly, the error, compounding the erroneous admission of the

---

4. United States v. Pennix, 313 F.2d 524, 531 (4 Cir. 1963).

5. The general character of the defendant is put in issue only when *he* calls witnesses to testify to his *reputation*. See United States v. Tomaiolo, 249 F.2d 683 (2 Cir. 1957); Simpkins v. United States, 78 F.2d 594, 597 (4 Cir. 1935).

evidence, so clearly affects substantial rights of the defendant as to require notice by us. F.R.Crim.P. 52(b).

For the reasons herein stated, the defendant is awarded a new trial.

Reversed and remanded.