STATE OF WEST VIRGINIA

*v.*

JACKIE LEE MCABOY

(No. 13687)

Decided July 5, 1977.

*Chauncey H. Browning*, Attorney General, *Fredric J. George*, Deputy Attorney General, for defendant in error.

*Nelson, Hager & Pancake, David M. Pancake* for plaintiff in error.

MILLER, JUSTICE:

The defendant, Jackie Lee McAboy, appeals his second degree murder conviction and assigns as principal error that the trial court committed reversible error when it permitted the State to attempt to impeach his credibility by questioning him as to a prior felony conviction.

We agree and hold that evidence of prior convictions to impeach the credibility of a defendant in a criminal trial is henceforth not permissible, except as hereinafter noted.[1]

Originally, this Court followed the rule that prior criminal convictions could not be used to impeach the defendant's credibility when he took the witness stand. *State v. Webb*, 99 W. Va. 225, 128 S.E. 97 (1925); *State v. White*, 81 W. Va. 516, 94 S.E. 972 (1918). The rationale as given in *Webb* was:

> "Many persons have been convicted of crimes and misdemeanors engendered by heat of passion and inconsiderate action, infirmities in human nature which are more or less prevalent in all. We can see no reason why such convictions

---

[1] The only convictions excepted from the rule adopted today are perjury and false swearing. The following cases, insofar as they hold that evidence of any prior conviction may be used to impeach the defendant, are hereby overruled: *State v. Friedman*, 124 W. Va. 4, 18 S.E.2d 653 (1942); *State v. Mullenax*, 124 W. Va. 243, 20 S.E.2d 901 (1942); *State v. McMillion*, 127 W. Va. 197, 32 S.E.2d 625 (1944); *State v. LaRosa*, 129 W. Va. 634, 41 S.E.2d 121 (1946); *State v. Taylor*, 130 W. Va. 74, 42 S.E.2d 549 (1947); *State v. Blankenship*, 137 W. Va. 1, 69 S.E.2d 398 (1952); *State v. Woods*, 155 W. Va. 344, 184 S.E.2d 130 (1971); *State v. Ramey*, ___ W. Va. ___, 212 S.E.2d 737 (1975); *State v. Stollings*, ___ W. Va. ___, 212 S.E.2d 745 (1975); *State v. McGee*, ___ W. Va. ___, 230 S.E.2d 832 (1976).

would affect the credibility or veracity of such a person who is being tried for a subsequent and wholly unconnected offense. Undoubtedly the evidence that defendant had previously served a term in the penitentiary was prejudicial to him, and was influential in the finding of the verdict." [99 W.Va. at 230]

In *State v. Friedman,* 124 W. Va. 4, 18 S.E.2d 653 (1942), this principle was abandoned by the Court based on a misconception of the purpose of the 1931 revision to W. Va. Code, 57-3-6.[2] This revision added the words ". . . and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; . . ."

*Friedman* referred to the 1931 Revisers' Note under W. Va. Code, 57-3-6, as indicating that the revision was to bring our State in line with the "better view", citing Wigmore, *Evidence* § 2276 (2nd ed. 1923). The Revisers' Note, however, contained no statement that the statutory revision was to change the law on impeachment of credibility by prior conviction.

Section 2276 of Wigmore did not deal with prior convictions, but related to the proper scope of cross-examination where the defendant voluntarily takes the stand. The core of the problem was whether a defendant could voluntarily take the stand, testify as to certain events,

---

[2] When the West Virginia *Code* of 1931 was adopted, the section under consideration was extended and enlarged to read as follows, the part in italics being the added language: "In any trial or examination in or before any court or officer for a felony or misdemeanor, the accused shall, with his consent (but not otherwise), be a competent witness on such trial or examination; *and if he so voluntarily becomes a witness he shall, as to all matters relevant to the issue, be deemed to have waived his privilege of not giving evidence against himself and shall be subject to cross-examination as any other witness; but his failure to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by any one.*"

and then invoke the privilege against self-incrimination if the prosecutor sought to cross-examine as to additional facts. The question was one of waiver and Section 2276 in Wigmore dealt entirely with the extent of the waiver of the privilege against self-incrimination. It extensively surveyed the various rules evolved by the courts under statutes similar in purpose to ours, which were designed to remove the harsh common law rule that a criminal defendant could not give testimony in his own behalf.

Wigmore's view on the most appropriate rule as to waiver where the defendant voluntarily takes the stand was that:

> "... waiver extends to all matters *relevant to the issue*, [emphasis in the original] meaning thereby to exclude 'collateral' matters, *i.e.* facts merely affecting credibility; ..." [*Supra* at 917-918]

Our statute before the 1931 revision simply stated that "... the accused shall, at his or her own request (but not otherwise) be a competent witness on such trial and examination." W. Va. Code, 1923, Chapter 152, Section 19. It did not specify the extent of the waiver of the privilege against self-incrimination. The Revisers' Note under W. Va. Code, 57-3-6 (1931), after citing Wigmore, stated:

> "There are several rules in the United States as to how far, if at all, an accused waives his privilege by voluntarily taking the stand. The law on this point in W. Va. is not very clear. This provision is intended to remove any doubt as to what is the W. Va. law in this respect."

Obviously, the Revisers who prepared the amendment to this particular section and the Note under it were addressing themselves to the extent that a defendant waives his constitutional privilege against self-incrimination when he voluntarily takes the witness stand. As the Revisers observed, prior to the 1931 amendment there was a question as to the extent the privilege against self-incrimination could be waived where the de-

fendant voluntarily took the stand. In *State v. Miller*, 75 W. Va. 591, 84 S.E. 383 (1915), this Court stated:

> "The prisoner himself was required over the objection of his attorney, to admit acts of degradation, wholly irrelevant to the issue. Since he was a party as well as a witness, we think the objection of his attorney was the equivalent of a claim of privilege on his part, and the court should have sustained the objections and excluded the questions. *State v. Hill*, 52 W. Va. 296, 298; *State v. Prater*, 52 W. Va. 132." [75 W.Va. at 594]

We find it to be of some significance that W. Va. Code, 57-3-5, which authorizes convicts to give testimony, expressly provides that ". . . the fact of conviction may be shown in evidence to affect his credibility." This section was liberalized by the revision of the 1931 Code. Its predecessor precluded a convict from testifying except by leave of court and then only if he had been punished or pardoned. In the case of a perjury conviction, there was an absolute bar against his testimony. W. Va. Code, 1923, Chapter 152, Section 17.[3]

Had the Revisers or the Legislature truly intended to change the law on impeachment by prior conviction as it existed before 1931, language similar to that found in W. Va. Code, 57-3-5, could have been added to W. Va. Code, 57-3-6. It is also apparent that the purpose of the revision to W. Va. Code, 57-3-6, was to clarify the waiver problem and was not intended to change the law with regard to the use of prior convictions for impeachment of defendant's credibility.

While *Friedman* changed the law, based upon a misconception of the purpose of the revision to W. Va. Code,

---

[3] "Except where it is otherwise expressly provided, a person convicted of felony shall not be a witness, unless he has been pardoned or punished therefor, but a person convicted of felony and sentenced therefor, except it be for perjury, may by leave of the court, be examined as a witness in any criminal prosecution, though he has not been pardoned or punished therefor, but a person convicted of perjury shall not be a witness in any case, although he may have been pardoned or punished."

57-3-6, the Court had some misgivings as to the prejudicial effect prior convictions might have upon the jury:

> "Of course, the trial judge, if requested to do so, should inform the jury that the cross-examination as to former convictions does not relate to the question of guilt or innocence, but only to the question of credibility. Due to the doubtful effect upon the jury, we do not think the trial judge should assume the initiative." [124 W.Va. at 8]

This nagging suspicion of the inherent prejudice involved in permitting a defendant to have his credibility attacked or impeached by cross-examination as to prior convictions has haunted this Court to the present day.

In *State v. McGee*, ___ W. Va. ___, 230 S.E.2d 832 (1976), because of the prejudice arising from the use of prior convictions to test credibility, a significant restriction was placed on such right as evidenced in the Syllabus by the Court:

> "When the State seeks to cross-examine a defendant in a criminal case regarding previous convictions for the purpose of testing his credibility, the trial court is required to consider the probative value thereof measured against the risk of substantial danger of undue prejudice to the accused and is further required to instruct the jury properly regarding the limited purpose of the question and the limited purpose for which the jury may consider it."

Justice Wilson, writing for the Court in *McGee*, made this comment about the danger in permitting impeachment of credibility by prior conviction:

> "We are not unaware of the contention that such a rationale is pure sophistry and that the State, under the guise of testing credibility, relies upon the hope that the jury, in spite of being instructed by the court as to the purpose for which the evidence is admissible, will nonetheless consider the revelation of other convictions as indicating guilt in the case being tried." [230 S.E.2d at 837]

Impeachment of the defendant's credibility by showing prior criminal convictions is but a part of a larger area of impeachment of character and reputation in order to destroy credibility.

This Court has consistently followed the majority view that a defendant's character and reputation may not be attacked merely because he voluntarily takes the witness stand.[4] In order for character impeachment to be proper, the defendant must affirmatively introduce evidence of his good character. *State v. McArdle,* ___ W. Va. ___, 194 S.E.2d 174 (1973); *State v. Seckman,* 124 W. Va. 740, 22 S.E.2d 374 (1942); *State v. Graham,* 119 W. Va. 85, 191 S.E. 884 (1937); *State v. Grove,* 61 W. Va. 697, 703, 57 S.E. 296 (1907).

A certain consistency is attained in limiting the use of prior convictions for the purpose of attacking the defendant's credibility (when such convictions have no relevancy to credibility), since this rule is then harmonized with the broader rule relating to impeachment of a defendant's reputation or character.

When we look to other jurisdictions we find that often the rule regarding the use of prior convictions to impeach the defendant has been the result of legislative, rather than judicial, action. In many states this rule is expressly set out in the statute removing the common law disability of the defendant giving testimony or in statutes which pertain to the competency of witnesses.[5]

---

[4] McCormick, *Law of Evidence* §190 (2nd ed. 1972); 1 Wigmore, *Evidence* §57 (3rd ed. 1940); 29 Am. Jur. 2d *Evidence* §341; 81 Am. Jur. 2d *Witnesses* §526; 98 C.J.S. *Witnesses* §494. *See United States v. Harris,* 331 F.2d 185 (4th Cir. 1964); *United States v. Walker,* 313 F.2d 236 (6th Cir. 1963); *State v. Jost,* 127 Vt. 120, 241 A.2d 316 (1968); *Jordan v. State,* 107 Fla. 333, 144 So. 669 (1932); *State v. Williams,* 337 Mo. 884, 87 S.W.2d 175 (1935).

[5] *See,* e.g., Cal. Evid. Code §§ 700, 788 (West); Colo. Rev. Stat. § 13-90-101; Conn. Gen. Stat. Ann. § 52-145 (West); Del. Code tit. 10, § 4303; Fla. Stat. Ann. § 90.08 (West); Ill. Ann. Stat. ch. 51, § 1 (Smith-Hurd); Ind. Code Ann. §§ 2-1725, 9-1602, -1603 (Burns); Iowa Code Ann. §§ 622.1, .2, .16 (West); La. Rev. Stat. Ann. § 15:495 (West); Mass. Gen. Laws Ann. ch. 233, §§ 20, 21 (West); Mich. Stat. Ann. §§

These jurisdictions are distinguishable from our law as we have no express provision in W. Va. Code, 57-3-6, authorizing impeachment of credibility through prior convictions, nor is such language to be found in any of the statutes dealing with the competency of witnesses in general. W. Va. Code, 57-3-1, *et seq.*

In any inquiry as to admissibility of evidence, the threshold question must be its relevancy. The customary answer on the relevancy of a prior conviction as to credibility is that it bears upon the truthfulness of the defendant.[6] This is tenuous at best, since it is based on the premise that all persons convicted of a crime are disposed not to tell the truth, no matter the nature of the crime or the degree of rehabilitation achieved.

Even if the relevancy issue were conceded, there are unquestionable prejudicial consequences flowing from the practice of allowing prior conviction impeachment. One of the most significant is that it has a chilling effect as it keeps the defendant with a prior conviction from becoming a witness in his own behalf.[7]

---

27A.2158, .2159; Mo. Ann. Stat. § 491.050 (Vernon); Neb. Rev. Stat. § 25-1211; N.J. Stat. Ann. §§ 2A:81-11, -12 (West); N.Y. Crim. Proc. Law § 60.40 (McKinney); Ohio Rev. Code Ann. § 2945.42 (Page); Okla. Stat. Ann. tit. 22, § 701, tit. 12, § 381 (West); Vt. Stat. Ann tit. 12, § 1608; Va. Code §§ 19.2-268, -269; Wash. Rev. Code Ann. §§ 5.60.040, 10.52.030, 10.52.040.

[6] *State v. Duke,* 100 N.H. 292, 123 A.2d 745 (1956); *State v. Troutman,* 249 N.C. 395, 106 S.E.2d 569 (1959); Ladd, *Credibility Tests-Current Trends,* 89 U. Pa. L. Rev. 166 at 174 (1940). The ultimate paradox of the relevancy premise can be illustrated by altering slightly the example given in Bentham, *Rationale of Judicial Evidence* (Bowring's ed. 1827), and quoted in 2 Wigmore, *Evidence* § 519 at 610 (3rd ed. 1940). It concerns a man so proud of his truthfulness that he challenges a person who called him a liar to a duel. He wins the duel but is subsequently convicted of murder. Several years later, after release from prison, he is indicted on another crime. If he elects to testify, he knows that his propensity to lie will be evidenced by his prior conviction.

[7] *Brown v. United States,* 370 F.2d 242, 245 (D.C. Cir. 1966); McCormick, *Law of Evidence* § 43 (2nd ed. 1972); Spector, *Impeachment Through Past Convictions: A Time for Reform,* 18 De Paul L. Rev. 7 (1968).

Statistical evidence supporting the theory that the threat of the use of prior convictions operates to keep the defendant from taking the witness stand is found in Kalvin & Zeizel, *The American Jury*, Table 43, page 160 (1966). The cases sampled were ranked in three categories: clear for acquittal, close, and clear for conviction. In the average of all categories the defendant with no record testified in 91% of the cases, while the defendant with a record testified in 74% of the cases. Of even more significance was the category where the case was clear for acquittal. The defendant without a record testified 90% of the time, while the defendant with a record testified only 53% of the time.

As to the prejudicial effect on the jury, Table 52 in *The American Jury, supra*, at page 160, reveals that in the cases sampled where the defendant had no record and took the stand, the acquittal rate was 65%. In contrast with cases sampled of the same quality of evidence where the defendant did not take the stand, the acquittal rate was 38%.

Where the rule arises by statute, at least one court and several commentators have suggested that there may be constitutional dimension to the prejudicial effect of prior convictions in the due process-presumption of innocence area and an equal protection violation.

This is upon the theory that its chilling effect retards the defendant from taking the stand, thereby impinging on his due process rights. Concomitantly, the presumption of innocence is impaired in the eyes of the jury, which conceives that his failure to testify, not withstanding instructions to the contrary, is an indication of guilt. The equal protection argument is advanced on the basis that such statute creates an impermissible distinction between criminal defendants, namely, the class with a record and that with no record.[8]

---

[8] *United States v. Bailey*, 426 F.2d 1236, 1240 (D.C. Cir. 1970); Note, *Constitutional Problems Inherent in the Admissibility of Prior Record Convictions Evidence for the Purpose of Impeaching the*

In *State v. Santiago*, 53 Hawaii 254, 492 P.2d 657 (1971), the court struck down its state statute permitting impeachment of credibility by evidence of prior convictions on the ground that it violated the Due Process Clauses of the state and Federal Constitutions, stating:

> "It has long been recognized that every criminal defendant has a right to testify in his own defense. That right is 'basic in our system of jurisprudence' and implicitly guaranteed by the Due Process Clause of the Fourteenth Amendment. In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948); Hovey v. Elliott, 167 U.S. 409, 417-419, 17 S.Ct. 841, 42 L.Ed. 215 (1897). While technically the defendant with prior convictions may still be free to testify, the admission of prior convictions to impeach credibility 'is a penalty imposed by courts for exercising a constitutional privilege.' Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). That penalty 'cuts down on' the right to testify 'by making its assertion costly.' *Griffin*, 380 U.S. at 614, 85 S.Ct. 1229 (holding that prosecutorial comment on a defendant's failure to take the stand is an unconstitutional burden on his right not to testify.)" [492 P.2d at 660-61]

We need not reach the constitutional questions in this case, as our rule arises from judicial sources. In returning the law in this area to its status before *Friedman*, we believe that we attain a more harmonious result with the general law as to impeachment of a defendant's character and reputation. This also follows a settled trend in the law to remove the common law restrictions that bar the accused criminal from effectively asserting his defenses.

We believe that impeachment through evidence of prior conviction is but a remnant from a barbaric past. It stands as one of the last vestiges of the common law

---

*Credibility of the Defendant Witness*, 37 U. Cin. L. Rev. 168 (1968); Note, *The Use of Prior Convictions to Impeach the Credibility of the Criminal Defendant*, 71 W.Va. L. Rev. 160 (1969).

harshness that denied the accused the right to testify in his own behalf. A rule which dictated that once a person is convicted of a felony, he was forever barred from giving testimony. A system that conceived the doctrine of attainder. This imposed, upon conviction of treason or felony, a forfeiture of all property and corruption of blood.

From the concept of corruption of blood flowed the fact that the convict could not inherit or transmit any estate upon his death, nor could his children, born subsequent to the felony, inherit from others, as they were of the corrupt blood.[9]

Finally, attainder brought the extinction of certain civil rights which, when fully visited upon the one convicted, was called civil death, *civiliter mortuus*.[10] Forfeiture and corruption of the blood are expressly barred in our Bill of Rights. *West Virginia Constitution*, Article III, Section 18.[11]

Thus far, we have discussed generally the reasons for re-establishing the earlier rule followed by this Court up to the Friedman case. We have noted that this rule prohibited the use of evidence of prior criminal convictions to impeach the defendant's credibility. It has been pointed out that under this rule, there was the recognized exception that if the defendant elected to place his good character in issue, evidence of prior convictions could then be introduced along with other relevant evidence bearing on bad character.

---

[9] 1 Stephen's, *Commentaries on the Laws of England*, at 332-35 (16th ed. 1914); 1 Pollock & Maitland, *The History of English Law*, at 447 (2nd ed. 1959).

[10] Judge Maxwell of this Court in two cases discusses the loss of civil rights resulting upon conviction. *Webb v. County Court of Raleigh County*, 113 W.Va. 474, 168 S.E. 760 (1933); *Moss v. Hyer*, 114 W.Va. 584, 172 S.E. 795 (1934). In *Moss*, he discusses the history of the common law in this area.

[11] A similar restriction upon the states exists in Article I, Section 10 of the United States Constitution. For treason against the United States, corruption of blood or forfeiture is limited to the life of the person attained. United States Constitution, Article III, Section 3.

Another exception to the general prohibition against impeachment of the defendant by evidence of his prior convictions which we believe is appropriate is a prior conviction of perjury or false swearing.[12] Conviction of these crimes goes directly to the credibility of the defendant and, in our judgment, their relevancy has a priority over their possible prejudicial effect.[13]

What has been said about the use of prior criminal convictions to impeach the defendant if he elects to testify is not meant to alter our existing law in regard to other witnesses. As to such other witnesses, the rule is that it rests within the sound discretion of the trial court whether a prior conviction may be shown to impeach his credibility. *State v. Justice*, 135 W. Va. 852, 65 S.E.2d 743 (1951); *State v. Crummit*, 123 W. Va. 36, 13 S.E.2d 757 (1941); *State v. Price*, 113 W. Va. 326, 167 S.E. 862 (1933).

The difference between the two rules is measured by the ultimate penalty arising from the possible prejudice. With a witness, the use of a prior conviction to impeach credibility may result in some loss of credibility in the eyes of the jury and attendant personal embarrassment. With the defendant, the prejudicial effect of a prior conviction may result in an unwarranted conviction.

As a final coda, we hold that the rule here re-established is not to be given retroactive application, except as to those cases in the trial courts or in the appellate process where the point has been specifically preserved.

*Reversed, remanded,*
*new trial awarded.*

---

[12] Research has not disclosed a case decided by this Court where this particular exception has been discussed. Since the Friedman case, this exception would not be necessasry since all prior convictions were usable as impeachment on credibility.

[13] Although evidence of previous convictions of perjury and false swearing may be used to impeach the credibility of the defendant when he voluntarily testifies in his own behalf, the trial court is still required to instruct the jury as to the limited purpose of the impeachment evidence as required by *State v. McGee*, ___ W. Va. ___, 230 S.E.2d 832, 837 (1976).

McGRAW, JUSTICE, *dissenting:*

In good conscience and in the interest of administration of justice, I must dissent from the majority opinion in this case. Point one of the syllabus holds that a defendant testifying at his criminal trial "may have his credibility impeached by showing prior convictions of perjury or false swearing, but it is impermissive to impeach his credibility through any other prior convictions." In the body of the opinion a broader rule is announced by holding "that the rule permitting the use of prior convictions to impeach the credibility of a defendant in a criminal trial is henceforth not permissible." In conclusion the opinion states that the new rule "is not to be given retroactive application, except as to those cases in the trial courts or in the appellate process where the point has been specifically preserved."

The rule announced in the opinion is unsettling, is judicial legislation, and is inconsistent with the recently adopted Federal Rules of Evidence, the Uniform Rules of Evidence proposed for state courts, and the rule accepted and applied generally in many states. The opinion cites *State v. McGee,* ___ W. Va. ___, 230 S.E.2d 832 (1976), which imposed a limitation on cross-examination of the defendant as a witness in his own criminal trial. The syllabus in that case holds that "When the State seeks to cross-examine a defendant in a criminal case regarding previous convictions for the purpose of testing his credibility, the trial court is required to consider the probative value thereof measured against the risk of substantial danger of undue prejudice to the accused . . . ." *Luck v. United States,* 348 F.2d 763 (D.C. Cir. 1965). Rule 609(a) of the proposed Uniform Rules of Evidence, a product of the National Conference of Commissioners on Uniform State Laws, reads as follows:

> "(a) General Rule. - For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court

determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or a witness, or (2) involved dishonesty or false statement, regardless of the punishment."

This proposed Rule relates to witnesses generally, as does Rule 609(a) of the Federal Rules of Evidence. The West Virginia statute, W. Va. Code, 57-3-6, provides that the accused in a criminal case "shall be subject to cross-examination as any other witness." He is not accorded special consideration or insulated from cross-examination for purposes of testing his credibility.

When the Federal Rules of Evidence were being drafted and promulgated, consideration was given to several alternatives to the language finally chosen relating to testing the credibility of witnesses. *See*, 3 Weinstein's Evidence, 609-14 (1976). Rule 609(a) of the Federal Rules of Evidence, relating to witnesses generally, provides:

"(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

The majority opinion does not persuade me that *State v. Friedman*, 124 W. Va. 4, 18 S.E.2d 653 (1942), embraces a misconception of the meaning and purpose of W. Va. Code, 57-3-6. *See*, IIIA Wigmore on Evidence, §§ 889-892 (Chadbourn Ed. 1970).

The legal profession is being obliged to deal with and apply an ever-increasing number of rules. The majority opinion would add still another variable and depart from the greatly settled and accepted procedure for testing the credibility of a defendant appearing as a witness at

his own trial. The opinion notes that "This nagging suspicion of the inherent prejudice involved in permitting a defendant to have his credibility attacked or impeached by cross-examination as to prior convictions has haunted this Court to the present day." This factor in the administration of criminal justice has been carefully examined and considered incident to the Federal Rules of Evidence, the proposed Uniform Rules of Evidence, and rules of evidence adopted in several states. It is not something new or novel in West Virginia. The *McGee* case, *supra,* considered this factor and brought the West Virginia law greatly in line with the Federal Rules of Evidence on this issue. But the majority opinion in the present case distorts the law on this point, breaks with the generally accepted practice and rules across the country, and invades an area in the administration of criminal justice more properly left to the legislative process.