**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0547** (Berkeley County CC-02-2019-F-50)

**Julie O.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Julie O., by counsel Matthew Brummond, appeals the judgment of the Circuit Court of Berkeley County, entered on June 25, 2020, denying her plea for mercy and sentencing her subsequent to the entry of her guilty plea to the first-degree murder of her eight-year-old daughter (for which she was sentenced to a term of imprisonment for life) and the attempted first-degree murder of her eleven-year-old daughter (for which she was sentenced to a term of imprisonment for three to fifteen years). Respondent State of West Virginia appears by counsel Patrick Morrisey and Andrea Nease Proper.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

One afternoon in September of 2018, Julie O. summoned her daughters to a second-floor bedroom in her home with the promise of kittens. When the girls turned their backs to their mother and bent to coax the kittens from their hiding place beneath a bed, Ms. O. shot the girls multiple times with a 9mm semi-automatic handgun. Ms. O.'s initial attack stopped when an improperly-loaded bullet jammed in the chamber and rendered the gun inoperable. The older of the girls, shot in the leg, escaped to another room and through an upper-story window. She went to the home of a neighbor, who called police. The younger daughter, shot twice in the back, stumbled to the first floor of the home, where Ms. O. stabbed her thirty-five times in the upper body using a steak knife. This daughter died before police arrived. Ms. O. evaded capture by hiding in a wooded area overnight. Ms. O. was found the next day with a letter expressing her intent that the death of her daughters would inflict suffering on the girls' father, her ex-husband.

1

Ms. O. entered a plea of guilty to the murder of her younger daughter and the attempted murder of her older daughter. In exchange for her plea, the State agreed to dismiss all remaining counts charged in her indictment (malicious assault and two counts of use of a firearm during the commission of a felony) and to show no pictures of her deceased daughter's body during the trial to determine mercy.

The circuit court heard the testimony of numerous witnesses at the mercy phase of Ms. O.'s trial, with Ms. O. presenting her witnesses first. Ms. O.'s own forensic psychologist testified that she suffered from borderline personality disorder, major depressive disorder, and an unreasonable fear of abandonment. To these diagnoses, Ms. O. added the opinion of a forensic psychiatrist who testified that Ms. O.s filicidal action was "altruistic[,]" meaning that Ms. O. set out to murder her daughters under the "misguided belief that the children [would be] better off dead." He explained that it is "extraordinarily rare" for those committing altruistic filicide of noninfant children to reoffend.

The State's forensic psychologist agreed with the diagnoses offered by Ms. O.'s expert witnesses, and also agreed that the likelihood of repeat filicide was low, but expressed doubt that Ms. O. could "adapt[] effectively" and explained that he believed that Ms. O. "would be at risk upon discharge for behaving in a way that would be adverse to [her surviving daughter] and possibly other people." At the conclusion of the State's evidence, Ms. O. sought the circuit court's leave to recall her own forensic psychiatrist "to testify regarding [the State's expert's] opinions that he rendered regarding what could happen [fifteen] years into the future[.]" The circuit court denied Ms. O.'s request. The jury returned without a recommendation of mercy, and Ms. O. was sentenced accordingly.

On appeal, Ms. O. asserts one assignment of error. She argues that the circuit court erred in denying her request to allow her expert witness to rebut the State's expert's "novel" testimony that she would present a danger to society if granted mercy. We review this argument in consideration of this standard:

> "The admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant." Syl. pt. 4, *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on another point, State v. McAboy*, 160 W.Va. 497, 498 n. 1, 236 S.E.2d 431, 432 n. 1 (1977).

Syl. Pt. 1, *State v. Dietz*, 182 W. Va. 544, 390 S.E.2d 15 (1990).

Ms. O.'s assignment of error is based on her assertion that the State's expert's report did not encompass an opinion on Ms. O.'s "future dangerousness" and she, therefore, could not have addressed this opinion during the testimony of her own expert witnesses, who were presented earlier in the mercy phase. Ms. O. maintains that "the first and only time that the State's expert opined about [Ms. O.'s] future dangerousness was when he testified—well after the defense rested."

2

As noted above, the State's expert witness explained that it was his opinion that Ms. O. "would be at risk upon discharge for behaving in a way that would be adverse to [her surviving daughter] and possibly other people." We find that this statement is a succinct and accurate representation of the opinion memorialized in the State's expert witness's report, which concluded, in part:

> When the relationships deteriorate or [Ms. O.'s] expectations are not reciprocated, it is highly probable that she will manifest some of the dysfunctional behaviors evidenced throughout her history. Whatever gains may be observed are likely to be short-lived and she will attempt to blame the system for any setbacks she might encounter. Her behavior is likely to be characterized by sudden and dramatic shifts in both her self-image and her impulsive acting out which may include suicidal gestures or actual attempts. As cited by [Ms. O.'s expert witness] in his discussion of Borderline Personality Disorder characteristics in the DSM-5, there is a pattern of chronic instability "with episodes of serious affective and impulsive dyscontrol" that include "self-destructiveness, angry disruptions in close relationship, and chronic feelings of deep emptiness and loneliness."

> While it is not likely that she will be able to sustain adaptive behavior for the full term of her incarceration, this could be possible. However, once she is outside the confines of a structured environment, it is unlikely she will sustain adaptive behaviors that she may have found useful while in prison. . . .

> . . . It is important to consider if Ms. O.'s incarceration for the remainder of her life might assist in the avoidance of any possible unwarranted interference with [her surviving daughter].

The State's expert witness testified at the mercy phase that he doubted that Ms. O. could effectively adapt in a non-structured, post-incarceration environment. He specified that he did not proffer an opinion on her potential to reoffend but considered the "degree of which she may do other things that might be harmful." In light of the expert witness's opinion memorialized in his report, we find that the mercy phase testimony was neither novel nor surprising and, thus, non-prejudicial. The circuit court exercised appropriate discretion and we will not disturb its ruling.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton